## A03A0980. ATLANTA AREA BROADCASTING, INC. v. JAMES BROWN ENTERPRISES, INC. et al.

(587 SE2d 853)

ANDREWS, Presiding Judge.

Atlanta Area Broadcasting, Inc. (AAB) appeals from an order of the trial court which enjoined it from exercising indemnification rights to reduce its note payment obligations under an agreement by which it purchased a radio station from Darrell Spann. For the following reasons, we reverse.

AAB purchased a radio station from Spann in 1998 pursuant to the terms of an asset purchase agreement (the purchase agreement) and began making monthly payments under the purchase agreement on a 40-year note for the benefit of Spann. The purchase was authorized by a July 1998 DeKalb County Superior Court order (the 1998 court order) entered in a suit against Spann brought by various plaintiffs claiming to be owners and creditors of the station who alleged damages and sought to enjoin the purchase. The 1998 court order denied the plaintiffs' motion to enjoin the purchase, authorized the purchase pursuant to the terms of the purchase agreement (with the exception of specific items set forth in the order), and, to preserve the purchase proceeds pending resolution of the plaintiffs' claims, ordered that payments due on the note be paid into the registry of the trial court. Although the plaintiffs brought an interlocutory appeal from the 1998 court order authorizing the purchase, they did so without obtaining a supersedeas bond, so after the purchase occurred, the appeal was dismissed as moot. *Brown v. Spann*, 271 Ga. 495 (520 SE2d 909) (1999).

After the appeal was dismissed, the plaintiffs dismissed their suit and refiled their remaining claims for damages in a suit filed in April 2000 in DeKalb County Superior Court which is the subject of the present appeal. The April 2000 suit was brought by the same plaintiffs — James Brown Enterprises, Inc.,[1] WMLD Radio Station, Inc., Reginald Simmons, Eugene Williams, Carl Gammage, and others — and again named Spann as a defendant and added as defendants, AAB, William Corey (the owner of AAB), and Ron McCarter (who worked closely with Spann to set up the purchase of the station). This suit again alleged that the plaintiffs had ownership or creditors' interests in the station and sought damages because these interests were not recognized in the purchase.

Thereafter, all the plaintiffs except Williams and Gammage dismissed their claims against the newly added defendants, AAB, Corey, and McCarter. AAB, Corey, and McCarter moved for sum-

---

[1] The trial court substituted James Brown Enterprises, Inc. for the interests of James Brown as a party to the April 2000 suit.

mary judgment on the claims brought by Williams and Gammage, and Spann moved for summary judgment on all the claims remaining against him. The trial court granted summary judgment motions brought by AAB, Corey, and McCarter, but denied Spann's motion for summary judgment. Spann appealed the denial of his motion for summary judgment, but only Williams appealed the grant of summary judgment in favor of AAB, Corey, and McCarter. In our unpublished opinion in *Williams v. Atlanta Area Broadcasting*, 258 Ga. App. XXVI (2002), we consolidated these appeals and affirmed the grant of summary judgment to AAB and Corey, affirmed the denial of summary judgment to Spann, and reversed the grant of summary judgment to McCarter. As to the remaining claims against Spann and McCarter, we found evidence that the plaintiffs' ownership or creditors' interests in the station were defrauded by the purchase and that the plaintiffs could seek damages from the proceeds of the purchase in Spann's possession. As to Williams's claims against AAB and Corey, we found no evidence that AAB or Corey was involved in any effort to defraud the interests of the station's owners or creditors.

After the April 2000 suit was filed, AAB, invoking indemnity provisions in the purchase agreement, began to offset and deduct amounts for attorney fees it paid to defend the suit from the monthly note payments it would otherwise have been required to make under the purchase agreement. While Williams's and Spann's appeals in the April 2000 suit were pending in this court, AAB continued pursuant to the 1998 court order to pay the monthly note payments required by the purchase agreement for Spann's benefit, which were then paid by Spann's trust into the registry of the court. But AAB also continued under the indemnity provisions of the purchase agreement to offset and reduce those payments by the amount of the attorney fees it expended to defend the suit. In February 2002, while the appeals remained pending, three of the plaintiffs (James Brown Enterprises, Inc., WMLD Radio Station, Inc., and Simmons) filed a motion in the trial court moving the trial court to order AAB to pay into the trial court registry all the amounts it deducted from note payments to defend the suit. The trial court entered an order on the motion on October 10, 2002, and ordered AAB to pay all the deducted amounts into the registry of the court and to refrain from deducting any further sums from the note payments paid into the court registry pursuant to the 1998 court order. The present appeal by AAB is from those portions of the court's October 2002 order.[2]

---

[2] We find no merit in AAB's claim that, because it was dismissed from the suit on summary judgment, this deprived the trial court of jurisdiction to enter the October 2002 interlocutory order affecting its rights in the purchase proceeds. The trial court retained jurisdiction over the plaintiffs' pending suit in which the purchase proceeds remained at issue and

In the 1998 court order, the trial court authorized the purchase of the station by AAB from Spann pursuant to the terms of the purchase agreement, recognized that the purchase agreement provided for AAB to make monthly note payments in favor of Spann, and stated that "Spann is hereby ordered to pay or make arrangements for the payment of all monies otherwise payable to himself under the terms and conditions of [the purchase agreement] into the Registry of the Court . . . until further order of the Court." AAB, which was not a party to the litigation when the 1998 court order was entered, was not ordered to do anything. Under the purchase agreement, AAB agreed to pay Spann $2,400,000 for the station, and Spann represented that he would sell the station free of all claims and rights of others. In addition to requiring AAB to make monthly note payments for 40 years on the purchase price, the purchase agreement also contained indemnity provisions requiring Spann to defend suits brought against AAB arising out of Spann's actions or failure to act in the operation of the station, or arising out of a material misrepresentation by Spann or failure to fulfill representations made in the purchase agreement. The indemnity provisions further provided that, if Spann failed to defend AAB against such a suit, AAB was allowed to defend itself, offset reasonable attorney fees incurred in its defense, and upon proper notice deduct the offset amount from AAB's payment obligations on the note. The purchase agreement contained similar indemnity provisions in favor of Spann, and further provided that, upon a final determination by a court of competent jurisdiction that any amount was improperly deducted from note payments under the indemnity provisions, AAB shall be required to repay all such amounts with interest.

The February 2002 motion brought by three of the plaintiffs in the April 2000 suit alleged that the 1998 court order authorizing the purchase prohibited AAB from using the indemnity provisions to deduct amounts from the note payments. In its order on the motion, the trial court found AAB notified Spann under the indemnity provisions that, because of Spann's failure to defend it against the plaintiffs' April 2000 suit, AAB invoked the right set forth in those provisions to defend itself and to offset and deduct attorney fees incurred in the defense from the monthly note payments. The order further found: (1) that the intent of the 1998 court order was to prohibit AAB from deducting any amounts from the note payments under the

could proceed to enter necessary and appropriate orders in that matter. *Cohran v. Carlin*, 249 Ga. 510, 511-512 (291 SE2d 538) (1982). Even though AAB was dismissed as a party from the suit, it had standing to appeal from the trial court's order directing its payment of the purchase proceeds. See 15A, Wright, Miller and Cooper, Federal Practice and Procedure, § 3902.1, pp. 103-104, 122-123 (2nd ed. 1992).

indemnity provisions of the purchase agreement, and (2) that, because questions of fact exist as to whether AAB is entitled under the indemnity provisions to make any deductions from the note payments, preservation of the status quo between the parties requires that AAB pay the full amount of the note payments so that all the purchase proceeds at issue are held in the registry of the court. Accordingly, the trial court ordered AAB to pay all amounts it had previously deducted into the court registry and to cease further deductions. The effect of the trial court's order was to issue a mandatory injunction requiring AAB to pay all of its past deductions into the court registry and to enjoin AAB from any further deductions. See *State Farm &c. Ins. Co. v. Mabry*, 274 Ga. 498, 509 (556 SE2d 114) (2001).

First, we find no basis for the trial court's conclusion that the 1998 court order prohibited AAB from properly invoking the indemnity provisions of the purchase agreement to offset and deduct reasonable attorney fees from the note payments. The 1998 court order authorized the purchase under the terms of the purchase agreement, which included the indemnity provisions. Although the 1998 court order contained specific exceptions to the purchase agreement and took steps to insure that the purchase proceeds were preserved in the court registry for satisfaction of potential claims, nothing in the order prohibited the enforcement of the indemnity provisions in the purchase agreement, including the offset and deduction rights provided to AAB. After the appeal from the 1998 court order was dismissed by the Supreme Court, the order authorizing the purchase for $2,400,000 became final and established the terms upon which the purchase was completed and upon which those asserting an interest in the purchase proceeds are bound. Even if the claims asserted by the plaintiffs in the present April 2000 suit differ from those asserted in the prior suit, issues decided in the prior suit before it was dismissed cannot be relitigated between the parties and their privies in the present suit. *Jordan v. Bd. of Public Safety*, 253 Ga. App. 339, 340-341 (559 SE2d 94) (2002). "The doctrine of collateral estoppel precludes the readjudication of an issue of law or fact already adjudicated between the parties or their privies, where that issue is essential to the judgment." (Citation and punctuation omitted.) Id. at 340. With respect to any claims by the plaintiffs against purchase proceeds paid by AAB, those claims are subject to the 1998 court order authorizing AAB to purchase the station from Spann pursuant to the terms of the purchase agreement. Although AAB, Corey, and McCarter were not parties to the prior suit against Spann, the additional parties and Spann are in privity with respect to their mutual interest in the validity of the purchase agreement authorized in the 1998 court order. *Butler v. Turner*, 274 Ga. 566, 568-569 (555 SE2d

427) (2001). Accordingly, we find under the 1998 court order that the purchase proceeds required to be deposited in the court registry do not include any amounts properly deducted by AAB from the note payments pursuant to the indemnity provisions of the purchase agreement. Amounts properly deducted by AAB pursuant to those provisions no longer represent purchase proceeds, but are reductions to the purchase price to which AAB is entitled under the terms of the purchase agreement. See *Foster v. Economy Developers*, 146 Ga. App. 282 (246 SE2d 366) (1978); *Nat. Surety Corp. v. Algernon Blair, Inc.*, 114 Ga. App. 30, 32-33 (150 SE2d 256) (1966), rev'd on other grounds, *Algernon Blair, Inc. v. Nat. Surety Corp.*, 222 Ga. 672 (151 SE2d 724) (1966); *Aiken v. Bank of Ga.*, 101 Ga. App. 200, 202-203 (113 SE2d 405) (1960) (recognizing contractual right to set-off and deduction).

Second, we find no facts on the present record which could support a determination by the trial court that AAB's offsets and deductions to the note payments were not authorized by the indemnity provisions of the purchase agreement. The trial court expressed concern in its order that the deductions may not have been authorized under a section of the indemnity provisions which authorized deductions to defend claims "arising from the act or failure to act of Seller in the operation of the Station." The trial court questioned whether the operation of the station had anything to do with the plaintiffs' claims in the April 2000 suit arising out of the sale of the station. Although we make no final determination as to whether the deductions were authorized, the indemnity provisions show they also apply to reasonable attorney fees incurred by AAB as a result of the seller's failure or refusal to defend a suit against AAB incident to or "resulting from a material misrepresentation, breach of warranty or nonfulfillment of an agreement on the part of Seller under [the purchase agreement], arising out of events occurring prior to the Closing Date." Spann, as the seller in the purchase agreement, represented in the agreement that he would convey the station free of all claims and rights of others, but in the April 2000 suit against AAB, the plaintiffs assert ownership and creditor interests in the station contrary to Spann's representations. Accordingly, there is substantial evidence supporting the conclusion that the indemnity provision authorized deductions by AAB for reasonable attorney fees to defend the April 2000 suit. There was no claim in the plaintiffs' motion, nor did the trial court find, that the amount of the attorney fees deducted by AAB was unreasonable.

An interlocutory injunction is a device used to maintain the status quo of the parties pending final adjudication of the case. *Lee v. Environmental Pest &c. Control*, 271 Ga. 371, 373 (516 SE2d 76) (1999). The power to grant an injunction should not be exercised except in clear and urgent cases where there is a vital necessity to

prevent a party from being damaged and left without a remedy. *Kennedy v. W. M. Sheppard Lumber Co.*, 261 Ga. 145, 146 (401 SE2d 515) (1991). Generally, a trial court's discretion in granting or denying an injunction will not be disturbed on appeal as an abuse of discretion unless there was no evidence upon which to base the ruling or it was based on an erroneous interpretation of the law. Id. at 146; *Ledbetter Bros., Inc. v. Floyd County*, 237 Ga. 22, 23 (226 SE2d 730) (1976).

The trial court's conclusion that the 1998 court order compelled its ruling cannot stand because it was based on an erroneous interpretation of the order. Contrary to the trial court's conclusion, we find that AAB was entitled to rely on the provisions of the 1998 court order which authorized the purchase on terms set forth in the purchase agreement, including the indemnity provisions. In fact, the record shows that when AAB purchased the station for $2,400,000 from Spann, it did so in specific reliance upon the 1998 court order and the order's adoption of the purchase agreement terms. It follows that any claims made by the plaintiffs in the April 2000 suit asserting an interest in the purchase proceeds paid by AAB are likewise made in reliance upon the court authorized purchase under the terms of the purchase agreement. Moreover, we find no evidentiary support for the trial court's concern that the indemnity provisions in the purchase agreement did not authorize AAB's deductions. To the contrary, the clear language of the indemnity provisions demonstrates the substantial likelihood that AAB's deductions were authorized. Because the trial court's rationale for granting injunctive relief against AAB either lacked evidentiary support or was based on an erroneous interpretation of the 1998 court order, we find that the court abused its discretion and that the portion of the order granting injunctive relief against AAB must be reversed.[3]

The plaintiffs are not left without a remedy for unauthorized or unreasonable deductions by AAB, if any are subsequently established. If any plaintiffs in the April 2000 suit establish claims to the purchase proceeds paid pursuant to the purchase agreement, nothing in this opinion prohibits those plaintiffs from seeking a court determination pursuant to the purchase agreement that AAB's deductions from the note payments were not authorized under the indemnity provisions (or that authorized deductions were unreasonable in amount) and that AAB is liable for repayment of those deductions plus interest as provided in the agreement.

*Judgment reversed. Barnes and Adams, JJ., concur.*

---

[3] The portions of the trial court's October 10, 2002 order concerning attorney fees paid for Spann, which were deducted from note payments and withheld from the court registry by or on behalf of Spann's attorneys, are not at issue in this appeal.

DECIDED SEPTEMBER 25, 2003.

*Holland & Knight, Thomas B. Branch III, Laurie W. Daniel, Susan E. Edlein,* for appellant.
*Albert H. Dallas, Richard G. Farnsworth,* for appellees.